ESTEBAN REUS GARCÍA ET AL., Plaintiffs and Appellees, *v.* JORGE FONT SALDAÑA, SECRETARY OF THE TREASURY, Defendant and Appellant.

No. R-68-235. Decided April 29, 1969.

*Rafael A. Rivera Cruz, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor General,* and *Juan José Ríos Martínez, Assistant Solicitor General,* for appellant. *Raúl Matos* and *Raúl E. Matos* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Matilda Moore Wilmerding died on June 19, 1967 leaving a will in which she named as executors her sister Edna and the Reverend Esteban Reus García, conferring upon them "those powers necessary at law for the administration of the estate of the deceased at her demise, the collection of debts, the payment of the inheritance tax, debts, legacies and gifts, cancellation of mortgages, and the performance of the necessary

steps in order to execute the provisions in her will." See §§ 823, 824 of the Civil Code, 31 L.P.R.A. §§ 2520, 2521. Nine days later the testamentary letters were issued.

The value of the estate of the deceased amounted to $396,605.25. Deductions and exemptions amounting to $10,636.83 were admitted for the purposes of the inheritance tax liquidation, the value of the property subject to taxation being fixed, therefore, at $385,968.42. A total tax of $79,577.24 was imposed, which was paid on November 3, 1967.

Two and a half months later the executors requested the reimbursement of the sum of $7,861.75 alleging that when the liquidation was made the amounts of $5,000 and $3,000 paid to the executors for their services, and $20,000 paid for attorney's fees during the testate proceedings were not considered as exemption from the estate. We noticed that, with the exception of an advance of $4,000 made to attorney Raúl Matos on August 18, 1967, the remainder of the sums claimed as deduction was paid subsequent to the liquidation and payment of the inheritance tax.[1] The petition for reimbursement having been denied the corresponding lawsuit was filed. At the trial the aforementioned facts were stipulated and the testimony of Reverend Reus was introduced to prove the details of the payments made and to establish that the division of the property was made after said payments were made.

The trial court, relying exclusively on *Silva* v. *Sec. of the Treasury*, 86 P.R.R. 315 (1962) and *Manautou* v. *Sec. of the Treasury*, 87 P.R.R. 174, 185–186 (1963), held the availability of the claim and ordered the Secretary of the Treasury to return the claimed sum of $7,861.75 plus legal interest

---

[1] Checks were issued to the executors on November 15, 1967, to the attorney, $7,500 on November 15, $7,000 on January 2, 1968, and $1,500 on a date that can not be fixed .

from November 3, 1967 to the date of .its total payment with imposition of costs.[2] We agreed to review.

 It is advisable to observe forthwith that the cases of Silva and Manautou, *supra*, do not establish conclusively that under Act No. 303 of April 12, 1946 (Sess. Laws, p. 782) the remunerations to executors and the attorney's fees for testate or intestate proceedings, as the case may be, are always admissible as exemptions from the estate. As we shall see, both involved peculiar situations which justified the propriety of the deduction. It should be reiterated that since the Inheritance and Gift Tax Act is a measure of purely fiscal character the concepts of the Common Civil Law and of the Tax Law do not always coincide. Specifically the net estate subject to division among the heirs pursuant to the provisions of the inheritance law is not necessarily the one that is subject to taxation by the conveyance made by virtue of the death of the testator or predecessor. *Cf. Rexach v. Sec. of the Treasury,* 96 P.R.R. 890 (1969), *Albanese v. Sec. of the Treasury,* 76 P.R.R. 302 (1954).

In *Silva, supra,* we held that attorney's fees and fees for services rendered to the hereditary estate by an *administrator* were deductible from the total value of the property left when its payment was involuntary—paid in compliance with a judicial decree—and the responsibility was incurred in the course of determining who were the legal heirs of the predecessor in an inheritance which was vacant until then. In *Manautou, supra,* attorney's fees were paid for professional

---

[2] Section 4 of Act No. 328 of May 13, 1949, 13 L.P.R.A. § 287, authorizes only to return to the taxpayer the amounts paid according to the schedule of cancellation of fees in tax cases. See Rule 44.4(a) of the Rules of Civil Procedure. We notice in passing that the plaintiff did not cancel the fees prescribed in subsection (c) of said section.

Section 8 of the Actions Against Commonwealth Act, 32 L.P.R.A. § 3083, which provides that the levying of costs shall be governed by the regular procedure, is not applicable. See, *Heirs of Arroyo v. Municipality,* 81 P.R.R. 425 (1959).

services rendered for the dissolution of a trust constituted by the constituent testator for the purposes of the distribution of the resulting corpus among the persons designated. Again we referred to the fact that the payment was made involuntarily because it was ordered in the deed by the constituent himself. At p. 186 we referred to: (i) it was a case of services rendered to the estate; (ii) its amount was paid with money from the inheritance, and (iii) the payment was made involuntarily.

■■ The difficulty which we encounter in the matter under consideration is the total absence of evidence as to the medullary question of whether the services rendered, both by the executors as well as by the attorney, were for the benefit of the estate. The logical inference is rather that it was a question of a simple operation, and without complications—scarcely five months had elapsed between the death and the distribution—in which the assets of the hereditary estate were well known. It was incumbent upon the claimants to place the court in a condition to decide whether the steps were taken in benefit of the hereditary estate or for the particular interest of the testamentary heirs. They did not do so. Not even was evidence offered as to the nature of the estate of the deceased, which precludes us from determining whether in effect there could have been administrative actions, other than those of mere custody and conservation.

Other guideposts indicate that under the authority of Act No. 303, *supra*, the deduction of these expenses—which are incurred after the occurrence of the event which gives occasion to the taxation, the death of the predecessor or testator—is rather the exception than the rule. Not only the worn-out doctrine about the restrictive interpretation of tax deductions, but the statute itself in its § 14, 13 L.P.R.A. § 892, tends to indicate that such sums are not deductible in providing the taxability of the same as if they "were a bequest

or a legacy."[3] On the other hand it is significant that when the new legislation concerning estate and gift taxes was approved, Act No. 167 of June 30, 1968 (Sess. Laws, p. 532), an express provision was inserted which sanctions *in a limited way* the deduction of fees paid to lawyers, accountants, appraisers, surveyors, partitioners and executors as exemption from the estate. Section 53(6), 13 L.P.R.A. § 5053[4] reads:

"(6) *Fees.*—Fees paid to lawyers, accountants, appraisers, surveyors, partitioners and executors, actually incurred as a whole until the date of the filing of the final return, the maximum amount of which shall be determined pursuant to the ascending table set below:

If the gross estate is:

| | | |
|---|---|---|
| Not over | $100,000: | 3% |
| From $100,000 to | 500,000: | 2½% or $3,000 whichever is higher |
| From $500,000 to | 1,000,000: | 2% or $15,000 whichever is higher |
| Over | 1,000,000: | 1½% or $20,000 whichever is higher." |

Note that under this act only the sum of $3,000 could have been claimed as deduction.

---

[3] This provision has its precedent in § 371 of the Political Code of 1902, R.S. p. 457, which was incorporated *ad verbatim* as § 4 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790).

Its text under Act No. 303 is the following:

"The perquisites, compensation or salary of any administrator, executor or trustee, whether fixed by the testator or by a competent court, or whether from a residuary legacy, shall be subject to the aforesaid tax in the same manner as if said perquisites, compensation or salary were a bequest or a legacy, and the degree of relationship of said administrator, executor or trustee shall be taken into account in the same manner as if said administrator, executor or trustee were an heir, legatee or grantee of the decedent."

[4] In federal taxation the deduction of administration expenses is permitted to the extent allowable by the laws of the jurisdiction under which the estate is being administered. Section 53(a), 26 U.S.C. § 2053; 2 Federal Tax Regulations, § 20.2053-3 (1969). See, 4 Mertens, The Law of Federal Gift and Estate Taxation, §§ 26.33 and 26.35; 2 Beveridge, Law of Federal Estate Taxation, § 13.07; 4 Rabkin and Johnson, Federal Income, Gift and Estate Taxation, § 53.02.

Practical considerations also lend support to our conclusion, since conceivably through the distribution of compensations to executors, administrators, and attorneys in arbitrary amounts—in the fixing of which the Secretary of the Treasury does not participate at all—the tax liability could be reduced, especially considering the progressive condition in the rate of taxation.

For the reasons stated the judgment rendered by the Superior Court, Ponce Part, on August 8, 1968, will be reversed and the complaint dismissed.